```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

JACKSON-BEAR GROUP, INC., a Florida
corporation doing business as ACE
PRESS,

                Plaintiff,

vs.                              Case No.  2:10-cv-332-FtM-29SPC

AMIR AMIRJAZIL, an individual, EDEN
US CORPORATION, a District of
Columbia corporation doing business
as ACE PRESS & PRINTING & COPYING
MAILING, VARIOUS JOHN DOES, JANE
DOES, ABC COMPANIES,

                Defendants.
_____

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on Defendants' Motion to Dismiss Or, In the Alternative, To Transfer Venue (Doc. #8) filed on August 25, 2010. Plaintiff filed a Response (Doc. #13) on September 17, 2010. The parties dispute which of them owns the trademark "ACE PRESS®". The primary dispute currently before the Court is whether there is personal jurisdiction over defendants in the Middle District of Florida. If so, defendants assert that the case should nonetheless be transferred to Washington, D.C.

**I.**

In a letter dated May 14, 2009, sent from Washington, D.C., to plaintiff "Ace-Press" in Fort Myers, Florida, defendant Amir Amirjazil accused "Ace-Press" of misappropriating his registered trademark "ACE PRESS". (Doc. #1, p. 36.) The letter asserted that

"we" are the proprietor of Registered Trademark No. 3,579,978 for "ACE PRESS," and demanded that plaintiff cease and desist all use of the ACE PRESS mark or litigation would ensue. (Id.) Defendant Amirjazil asserted that "we" first used the trademark in 1993. This letter was sent on letterhead which stated: "ACE PRESS® PRINTING & COPYING MAILING," with a telephone number with a Washington, D.C. area code. (Id.) No substantive response to this letter is in the record.

In a letter dated March 18, 2010 (id. at 38), defendant Amirjazil sent another cease and desist demand to Ace Press in Fort Myers, Florida from Washington, D.C. The letter was on the same letterhead as the prior letter. Amirjazil stated that Ace Press had still misappropriated the ACE PRESS trademark, and demanded that Ace Press cease and desist all use of the ACE PRESS mark by May 31, 2010, or else his attorney was prepared to proceed with litigation. (Id. at 39.)

Winning the race to the courthouse, on May 24, 2010, plaintiff Jackson-Bear Group, Inc., d/b/a/ Ace Press (plaintiff or Jackson-Bear), filed an eight-count Verified Complaint (Doc. #1) in the Middle District of Florida. The Complaint alleges a claim for a declaration that defendants do not possess rights to the "ACE PRESS" trademark (Count I), and seven additional claims pursuant to federal statutes: trademark infringement (Count II); unfair competition (Count III); cancellation of defendants' trademark

registration (Count VI); cyberpiracy (Count V); false designation of origin (Count VI); false and misleading description of fact (Count VII); and false and misleading representation of fact (Count VIII).  (Id. at ¶¶ 50-87.)  In its Complaint, Jackson-Bear essentially alleges that Defendants Amir Amirjazil, Eden US Corporation, d/b/a/ Ace Press Printing & Copying Mailing, as well as various John and Jane Does and ABC Companies (together the Eden Defendants) have actively infringed on its trademark "ACE PRESS". (Id. at ¶23.)  Plaintiff asserts that it is the owner of the trademark "ACE PRESS," and has been involved in design, typesetting, custom printing and related services in Southwest Florida since 1963.  Plaintiff alleges that the Eden Defendants have been actively engaged in using the same trademark "ACE PRESS" for the same or similar goods and/or services, in the same or similar geographic areas, in direct competition with plaintiff. (Id. at ¶23.)  Plaintiff alleges that this infringing activity includes, but is not limited to, offering the Eden Defendants' goods and services for sale over the internet, registering the internet domain name "www.acepress.com", and applying for and obtaining registration of the "ACE PRESS" trademark through false pretenses.  (Id. at ¶¶ 24-41.)

**II.**

"Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter

jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999); see also Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007).[1] The parties do not dispute the subject matter jurisdiction of the Court, and the claims are clearly within the general federal question jurisdiction provided by 28 U.S.C. § 1331 and the more specific federal jurisdiction granted by 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121(a).

Personal jurisdiction is a restriction on judicial power as a matter of individual liberty, and "a party may insist that the limitation be observed, or he may forgo that right, effectively consenting to the court's exercise of adjudicatory authority." Ruhrgas, 526 U.S. at 584. Unless waived or forfeited[2], personal jurisdiction is "an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication." Id. at 584 (citation and internal quotation marks omitted). Defendants assert that there is no personal jurisdiction over them in the Middle District of Florida.

---

[1] Sinochem held that a court could dismiss for *forum non conveniens* before deciding either subject matter jurisdiction or personal jurisdiction. 549 U.S. at 435. Defendants have in passing asked for such a dismissal in this case. (Doc. #8, pp. 11-12.)

[2] Insurance Corp. Of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703-04 (1982).

Plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). A prima facie case is established if plaintiff alleges enough facts to withstand a motion for directed verdict or judgment as a matter of law. PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 810 (11th Cir. 2010); SEC v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997). If defendant challenges jurisdiction by submitting affidavit evidence making a specific factual denial based on personal knowledge, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. Mazer, 556 F.3d at 1274. Plaintiff bears the ultimate burden of establishing that personal jurisdiction is present. Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1217 (11th Cir. 2009). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002). "If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists." PVC Windoors, 598 F.3d at 810.

The existence of personal jurisdiction is a question of law. Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010); Oldfield, 558 F.3d at 1217. When

subject matter jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, the Court looks to the state long-arm statute to determine the existence of personal jurisdiction. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626-27 (11th Cir. 1996). Neither 28 U.S.C. § 1331, nor § 1338(a), nor 15 U.S.C. § 1121(a) contain a service of process provision, so the Court looks to the Florida long-arm statute.[3]  "A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008).

The reach of the Florida long-arm statute is a question of Florida law. Mazer, 556 F.3d at 1274. "A Florida court conducts a two-step inquiry when determining whether jurisdiction under Florida's long-arm statute is proper in a given case. Initially, it must determine whether the complaint alleges jurisdictional

---

[3]The Complaint also cites four other federal statutes as a basis for federal jurisdiction (Doc. #1, ¶2), but none of these grant subject matter jurisdiction in this case. Title 28 U.S.C. § 2201 is a procedural statute only which grants no jurisdiction where jurisdiction does not otherwise exist. Vaden v. Discover Bank, 129 S. Ct. 1262, 1278 n.19 (2009). Title 15 U.S.C. § 1116 does not grant jurisdiction, but grants courts which have jurisdiction the authority to issue injunctions as a remedy. Similarly, § 1119 addresses the remedial acts a court may take, but is not an independent grant of jurisdiction. Finally, § 1125(2)(A) addresses jurisdiction only of an *in rem* action.

facts sufficient to invoke the statute. If so, the court must then examine whether the defendant has sufficient 'minimum contacts' with Florida in order to satisfy due process requirements." Canale v. Rubin, 20 So. 3d 463, 465 (Fla. 2d DCA 2009)(citing Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So. 2d 582, 584 (Fla. 2000)). The due process analysis itself involves a two-part inquiry in which the Court first considers whether defendant engaged in minimum contacts with the state of Florida, then considers whether the exercise of personal jurisdiction over defendant would offend traditional notions of fair play and substantial justice. Madara v. Hall, 916 F.2d 1510, 1515-16 (11th Cir. 1990).

### III.

The Eden Defendants argue that the Complaint fails to establish a prima facie case of either general or specific personal jurisdiction over any of the non-resident Eden Defendants under the Florida long-arm statute. (Doc. #8, pp. 4-8.) Plaintiff argues to the contrary.

**A. General Jurisdiction**

Florida's long-arm statute provides in part: "A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla.

Stat § 48.193(2). "The reach of this provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." Fraser v. Smith, 594 F.3d 842, 846 (11th Cir. 2010). It does not appear that plaintiff is asserting general jurisdiction over the defendants in either the Complaint or the Memorandum in opposition to the motion. Neither the facts alleged in the Complaint nor those alleged in the Declaration of Thomas Jackson (Doc. #14) would satisfy this standard or refute the affidavit of defendant Amijazil. Therefore, no general jurisdiction in Florida has been established as to the Eden Defendants.

**B.   Specific Jurisdiction**

Specific jurisdiction refers to jurisdiction over causes of action that arise from or are related to the party's actions within the forum. PVC Windoors, 598 F.3d at 808. The specific jurisdiction provision of the Florida long-arm statute provides that a defendant "submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts: (a) operating, conducting, engaging in, or carrying on a business or business venture in this state, or having an office or agency in the state. . . . [or] (b) [c]ommitting a tortious act within this state." Fla. Stat. § 48.193(1)(a), (b). The Complaint alleges that

"[d]efendants have engaged in the transaction of business and the commission of tortious acts in Florida, . . ." (Doc. #1, ¶30.)

Florida law requires, however, "before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action." PVC Windoors, 598 F.3d at 808 (internal quotation marks omitted). The Court will therefore first examine the sufficiency of the counts as plead.

**(1) Sufficiency of Causes of Action**

Defendants do not challenge the sufficiency of any cause of action in their motion. A claim is properly plead if it is plausible. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). The only overriding issue which requires discussion is plaintiff's assertion that defendants infringed on a mark which was admittedly registered by defendant. The law is clear that there can be a common law cause of action under certain circumstances even where defendant has registered the mark. Tana v. Dantanna's, 611 F.3d 767, 773-74 (11th Cir. 2010). The Court concludes that all of the claims are sufficiently pled to allow application of the Florida long-arm statute.

**(2) Fla. Stat. § 48.193(1)(a): Engaging in Business In Florida**

The Complaint alleges that "[d]efendants have engaged in the transaction of business . . . in Florida . . ." (Doc. #1, ¶30.) Alleging that defendants have engaged in the transaction of

business in Florida is not the same as alleging defendants are "engaging in . . . a business or business venture in this state." Fla. Stat. § 48.193(1)(a). "In order to establish that a defendant is carrying on [a] business for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1167 (11th Cir. 2005) (quotation marks omitted)(quoting Future Tech. Today, Inc. v. OSF Healthcare Sys.,218 F.3d 1247, 1249 (11th Cir. 2000)); see also Fraser, 594 F.3d at 848. Some factors the Court must consider include the "presence and operation of an office in Florida, [ ] the possession and maintenance of a license to do business in Florida, [ ] the number of Florida clients served, [ ] and the percentage of overall revenue gleaned from Florida clients." Id. (internal citations omitted).

More specifically, plaintiff asserts that defendants have a website that can be accessed in Florida, which it infers is sufficient to show a general course of business in Florida. As discussed below in connection with the tortious act, the website is not itself sufficient under § 48.193(1)(a). Since defendants have no offices, own no land, possess no licenses in the Middle District of Florida, and there is no evidence that they have obtained revenue from Florida clients, the Court finds that no specific

personal jurisdiction over defendants in Florida has been established pursuant to § 48.193(1)(a). Sending cease and desist letters, by itself, does not constitute engaging in a business venture within Florida. See Nida Corp. v. Nida, 118 F. Supp. 2d 1223, 1228 (M.D. Fla. 2000)(although the Court eventually held there was personal jurisdiction under § 48.193(1)(b)).

**(3) Fla. Stat. § 48.193(1)(b): committing a tortious act**

Section 48.193(1)(b) provides that a defendant "submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from [the defendant's activities] . . . [c]ommitting a tortious act within this state." Fla. Stat. § 48.193(1)(b). It is well-established that a defendant need not physically be in Florida. "[I]n order to 'commit a tortious act in Florida, a defendant's physical presence is not required. . . . 'committing a tortious act' in Florida under section 48.193(1)(b) can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida. However, the cause of action must arise from the communications." Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002). "Tortious acts committed through website postings, however, present a unique challenge: Unlike a phone call, chatroom conversation, or fax, images or words posted to a website are not electronic communications in the traditional sense." Smith v. Trans-Siberian Orchestra, 728 F. Supp. 2d 1315, 1321 (M.D. Fla. 2010)(citing

Internet Solutions Corp. v. Marshall, 39 So. 3d 1201, 1210-11 (Fla. 2010)). "First, they are not generally directed at a particular person or even a particular state. [ ] Second, even when directed at a particular person or state, the website is still accessible from virtually any forum." Id. (internal citation omitted).

Plaintiff alleges that defendants committed the following tortious acts in Florida: maintaining an active website which was directed into Florida; fraudulently registering the "ACE PRESS" mark; intentionally harming plaintiff by displaying the infringing mark in Florida; and sending two cease and desist letters on letterhead that bore the mark. (Doc. #13, pp. 8-10.)

Fraudulently registering the ACE PRESS mark was not a tortious act in Florida. Nothing is alleged which would suggest that the registration took place in Florida.

Two of the acts are related, maintaining an active website which was directed into Florida and displaying the infringing mark in Florida. Licciardello v. Lovelady, 544 F.3d 1280 (11th Cir. 2008) held that a website that displayed plaintiffs' mark satisfied § 48.193(1)(b) because the alleged trademark infringement on the website, though created in Tennessee, caused injury in Florida. Id. at 1283. "[T]he alleged infringement clearly also occurred in Florida by virtue of the website's accessibility in Florida." Id. at 1280; see also KVAR Energy Sav., Inc. v. Tri-State Energy Solutions, No. 6:08-cv-85, 2009 WL 103645, at *11 (M.D. Fla. Jan.

-12-

15, 2009) (holding that specific jurisdiction under § 48.193(1)(b) applies where website displays alleged trademark infringement and is accessible in Florida). The Florida Supreme Court, however, has recently held in a defamation action that when the defamation is posted online, "the material has been 'published' in Florida and the poster has communicated the material 'into' Florida, thereby committing the tortious act of defamation within Florida." Internet Solutions Corp., 39 So. 3d at 1215. Although, the plaintiff in Internet Solutions Corp., completed the acts in Washington, the Court found that due to the nature of the Web the material was accessible by anyone, "[t]hus, once the allegedly defamatory material is published in Florida, [defendant] has committed the tortious act of defamation within Florida for purposes of Florida's long-arm statute." Id. at 1216. The posting alone, however, did not satisfy the long-arm statute, it was "the posting of such that was both *accessible* in Florida and *accessed* in Florida [that] constituted the commission of a tortious act of defamation within Florida under § 48.193(1)(b)." Internet Solutions Corp. v. Marshall, 611 F.3d 1368, 1370 (11th Cir. 2010)(emphasis in original).

In the instant case, the Eden Defendants had a website that displayed the "ACE PRESS®" trademark at issue. While the website was certainly accessible in Florida, according to the Declaration of Thomas Jackson, he accessed the website "prior to providing the

-13-

declaration" which was signed on September 17, 2010. (Doc. #14, ¶8.) There is no evidence that plaintiff, or any other Florida resident, accessed the website prior to the filing of the instant suit on May 24, 2010. (Doc. #1.) Additionally, Jackson only attests that the website "provide[s] a means for direct contact by customers here in the Middle District of Florida, . . ." and that "potential customers from Florida, are able to upload their computer files and initiate an order request . . ." (Id. at ¶¶ 10-11.) There is no evidence that any Florida residents contacted defendants, uploaded their computer files to the website, or were actual customers of defendants. However, even assuming that the Court should find that the alleged trademark infringement occurred in Florida, and thus satisfying section 48.193(1)(b), as discussed below, the Court finds that the exercise of personal jurisdiction does not comport with due process.

## C. Constitutional Due Process

The second part of the jurisdiction analysis is whether the exercise of personal jurisdiction would violate Due Process.[4] In

---

[4] Neither the Florida Supreme Court nor the Eleventh Circuit address the due process inquiry in Internet Solutions Corp. "We emphasize that we are only asked to address the first step of the inquiry--whether section 48.193(1)(b) applies to confer personal jurisdiction. The second step is a more restrictive one, precluding suit in any situation where the exercise of jurisdiction over the nonresident defendant would violate due process. This question is not before us in the certified question and we do not deem it necessary to broaden the question in order to address the due process inquiry." Internet Solutions Corp., 39 So. 3d at 1216;
(continued...)

order for jurisdiction to comport with the due process clause, there must be a "purposeful availment of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." <u>Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino</u>, 447 F.3d 1357, 1363 (11th Cir. 2006)(quotation marks omitted). As long as there is a "substantial connection", even a single act can be sufficient to support jurisdiction depending on the nature and quality of the contact. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476, n.18 (1985). Physical presence of the defendant in the forum State is not required, <u>id.</u> at 476, and jurisdiction may be found if defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).

In order to determine whether sufficient minimum contacts exist in torts cases, the Eleventh Circuit applies the "effects" test. <u>Oldfield</u>, 558 F.3d at 1220 n.28 (citing <u>Calder v. Jones</u>, 465 U.S. 783 (1984)). "[T]he effects test requires a showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." <u>Id.</u> at 1221 (citing

---

[4](...continued)
<u>Internet Solutions Corp.</u>, 611 F.3d at 1371 n.1.

Calder, 465 U.S. at 789-90); see also Smith, 728 F. Supp. 2d at 1323.

"Intellectual property infringement constitutes an intentional tort if the infringement is undertaken with the purpose of making money." Smith, 728 F. Supp. 2d at 1324 (citing Lovelady, 544 F.3d at 1287-88). However, "[m]ere negligent use of an infringing mark would not satisfy the [effects] test." Lovelady, 544 F.3d at 1286 n.6 (citing Calder, 465 U.S. at 788-90). "Under the effects test, acts expressly aimed by the defendant at an individual in the forum may result in personal jurisdiction over the defendant, but mere untargeted action or a fortuitous result will not." Id. The second requirement of the effects test is that the defendant's tortious act be expressly aimed at the forum state. "A defendant's tortious act is aimed at the forum state, if it is directed at a resident of the forum." Smith, 728 F. Supp. 2d at 1324 (citing Lovelady, 544 F.3d at 1287).

Plaintiff alleges that by infringing on their trademark, defendants are unjustly enriched by trading on plaintiff's goodwill. (Doc. #1, ¶37.) Further, plaintiff argues that the cease and desist letters that defendants sent, because they displayed the trademark, were additional tortious acts purposefully sent into Florida and directed at plaintiff. (Doc. #13, pp. 8-10.)

The Court finds that even considering both the cease and desist letters and the defendants' website, defendants actions do

-16-

not meet the first and second requirements of the effects test. Unlike in Smith, where defendant was selling plaintiff's copyrighted image online, 728 F. Supp. 2d at 1323, in the instant case defendants are not selling the mark in question, they were independently using the mark, which they believed they were using in good-faith. Further, unlike in Lovelady and Smith, the are no allegations that show that the Eden Defendants knew about plaintiff's claim of entitlement to the trademark prior to the sending of the cease and desist letters. See Lovelady, 544 F.3d at 1282; Smith, 728 F. Supp. 2d at 1322-23. The Court agrees that the mere posting of an infringing document on a website without more is not sufficient to demonstrate the Eden Defendants purposefully aimed their activity toward Florida. See Full Sail, Inc. v. Spevack, No. 603cv88, 2003 WL 25277185 at *6 (M.D. Fla. Oct. 21, 2003); Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1088 (9th Cir. 2000); Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998); Cybersell, Inc. v. Cybersell, Inc. 130 F.3d 414, 419-420 (9th Cir. 1997)(holding that there was no personal jurisdiction over foreign company where there was no showing that the defendant even knew of the existence of the plaintiff, let alone targeted them individually).

Additionally, the Court is persuaded by analogous Federal Circuit law that holds, "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of

its patent rights without subjecting itself to jurisdiction in a foreign forum.  A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement.  Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness." Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1360-1361 (Fed. Cir. 1998). Thus, "personal jurisdiction may not be exercised constitutionally when the defendant's contact with the forum state is limited to cease and desist letters, 'without more.'" Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1363 (Fed. Cir. 2006)(citing Red Wing Shoe Co., 148 F.3d at 1360); see also Avocent Huntsville Corp. v. Aten Int'l Co. Ltd., 552 F.3d 1324, 1341 (Fed Cir. 2008)(finding no personal jurisdiction in a patent infringement case where the only acts in the forum were the sending of cease and desist letters).

Since the Court has found that defendants did not purposefully avail themselves of a Florida forum, an exercise of personal jurisdiction would not comport with the due process clause. Therefore, the Court declines to exercise personal jurisdiction over the Eden Defendants.

Accordingly, it is now

**ORDERED**:

1.  Defendants' Motion to Dismiss Or, In the Alternative, To Transfer Venue (Doc. #8) is **GRANTED**.

2.  Plaintiff's Verified Complaint (Doc. #1) **dismissed** without prejudice.

3. The Clerk shall enter judgment accordingly, close the file, and terminate all other pending deadlines.

**DONE AND ORDERED** at Fort Myers, Florida, this __30th__ day of March, 2011.

_____
JOHN E. STEELE
United States District Judge


Copies:
Counsel of record